UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BANKSHOT BILLARDS, INC., d/b/a
Bankshot Billards,

        Plaintiff,

-vs-                              Case No.  5:07-cv-455-Oc-10GRJ

CITY OF OCALA, a Florida municipal
corporation,

        Defendant.
_____

# O R D E R

This case involves a challenge to the constitutionality of an ordinance of the City of

Ocala ("City").  The ordinance regulates the presence of persons under the age of 21 in

establishments where alcoholic beverages are consumed.  The suit was brought by the

Plaintiff, Bankshot Billiards, Inc. ("Bankshot"), in the state circuit court seeking a declaratory

judgment and injunctive relief (Doc. 1).  When a supplemental complaint added a federal

claim for damages under 42 U.S.C. § 1983 (Doc. 2), the City timely removed the case to

this Court.  There is no dispute that this Court has both subject matter and in personam

jurisdiction.

The City has moved for summary judgment on all claims (Doc. 22).  The motion has

been fully briefed and oral argument was heard on October 16, 2009 (Docs. 33, 52).  There

is no genuine issue concerning any material fact.  Disposition by summary judgment is

appropriate.  Upon due consideration, the Court has determined that the ordinance under

attack is unconstitutionally vague on its face in violation of the Fifth and Fourteenth Amendments.  Declaratory and injunctive relief in Bankshot's favor shall be granted.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c)(2), the entry of summary judgment is appropriate only when the Court is satisfied that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  In applying this standard, the Court must examine the materials on file and record evidence "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  Celetex, 477 U.S. at 324.  See also Fed. R. Civ. P. 56(e)(2).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by

facts.  <u>Evers v. Gen. Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory

allegations without specific supporting facts have no probative value").

### **Undisputed Material Facts**

<u>I.</u>    <u>Bankshot Billiards' Operations</u>

Opening business at its present location in Ocala, Florida in 1995, Bankshot has

operated as a typical pool hall consisting of 16 regulation pool tables.  It holds a general

liquor license from the State authorizing the sale of alcohol on the premises, and it offers

limited food items to its patrons together with both alcoholic and nonalcoholic beverages.

It also sells billiard supplies and conducts pool tournaments; and, until this dispute arose,

it catered to both adults and younger persons under the age of 21.[1]

In 2004, Bankshot expanded its pool hall facility and opened an upstairs area of the

establishment as a night club offering a dance floor with music and associated

entertainment.  In 2006, Bankshot further expanded its night club operations into ground

floor space adjoining the pool hall.  The night club aspect of the business, however, is

conducted only during certain days and hours; it is not operated on a daily basis like the

---

[1]State law prohibits the sale of alcohol to those under 21, but does not preclude the presence of minors in establishments where alcohol is sold to those 21 and older.  In separate litigation commenced in state court by Bankshot and others, the court held that state law does not preempt local age restriction ordinances of the kind involved in this action and no issue of preemption is presented here.  As such, to the extent Bankshot has raised any claims in its Supplemental Complaint that the ordinance violates Fla. Stat. §§ 561.02 and 562.45, the Court will consider those claims to be moot.

pool hall. The record reflects that the pool hall business is open for 77 hours per week and, during 10 of those hours, it advertises itself as a pool hall and as a place for dancing.

II.     The Ordinance

At about the same time that Bankshot began its nightclub endeavor, the City of Ocala decided to commence regulating the presence of minors (those under 21) in some establishments - but not all - where alcohol is served. This proved to be a difficult and complicated task. Ordinance 5346 enacted in 2005 was the first of several attempts to create distinctions between adult night clubs and other types of alcoholic beverage establishments that the City wished to leave alone such as restaurants, hotels, bowling alleys and pool halls routinely patronized by families with minors. After half a dozen revisions, repeals and re-enactments, the City adopted Ordinance 5650 in April 2007 - the ordinance presently under assault in this case.

The core provision of Section 6-9 of Ordinance 5650, entitled "Patron Age Restrictions," is Subsection (b):

> (b) Prohibition. It shall be unlawful for persons under the age of 21 years to enter or remain in any alcoholic beverage establishment, or to be permitted to remain in any alcoholic beverage establishment by owner, managers, employees or independent contractors of such alcoholic beverage establishments, except as hereinafter provided.

"Alcoholic beverage establishment" is defined in Subsection (a)(1) as "a business establishment that is either a bottle club, cocktail bar, or nightclub as defined in this section." A "nightclub"

means a business establishment that: is open after 11:00 p.m., has floor space available and used for dancing; and has a band, orchestra or other form of music or musical or other entertainment. If the establishment meets the foregoing requirements during any business day, it is a "nightclub" for purposes of this section on all business days.

Subsection (a)(10).[2]

Subsection (c) provides for certain "exemptions" from the prohibition, including the exemption of a "billiard hall." See Subsection (c)(7). Subsection (a)(2) supplies a detailed definition of what is meant by the term "billiard hall:"

(2) "Billiard hall" means a business establishment:

a. Having the greater of:

(i) 12 pool or billiard tables, or

(ii) one full-size pool or billiard table per 625 square feet of gross floor area of the business establishment. Each pool or billiard table must have a playing surface at least three and one-half feet by seven feet, and there must be an unobstructed path of at least four and one-half feet between all sides of the pool or billiard table and any other object, wall or other pool or billiard table;

b. Where the operation of pool or billiard tables is the primary attraction held out to the public and the primary amusement engaged in by patrons. For purposes of this subsection, all of the following criteria must be met for the operation of pool or billiard tables to be the primary amusement engaged in by patrons:

---

[2]There is no contention that Bankshot would fall within the definition of bottle club or cocktail bar.

1. The playing or watching of pool or billiards must be the most significant activity engaged in by patrons.

2. The patrons must be able to play pool or billiards during all hours the premises are open to the public, and pool cues and balls must be available for use during all such time periods.

3. More than half of the patrons on the premises must be playing pool or billiards, waiting to play pool or billiards, or watching the playing of pool or billiards.

4. The establishment may not charge a fee to enter (e.g., a "cover charge") for portions of the establishment not containing pool or billiard tables.

5. Any portion of the establishment available and used for dancing may not exceed the lesser of:

   (i) 400 square feet; or

   (ii) 20 percent of the square footage of the portion of the establishment open to the public that is not devoted to playing pool or billiards;

c. Where at least 50 percent of the square footage of the portion of the establishment open to the public is devoted to playing pool or billiards.

Two other provisions of the Ordinance are pertinent to Bankshot. Subsection (d), entitled "Limitations on Exemptions," states in relevant part:

(1) Subject to subsection (e), in order to qualify for an exemption in subsection (c) above, a bona fide restaurant, bowling alley, billiard hall, comedy club, or pari-mutuel facility must meet the definition therefor contained in subsection (1) during the entire time that the establishment is open for business; provided, however, the failure of an establishment to meet such criteria during

isolated time periods for reasons other than the conduct of the establishment shall not cause the establishment to fail to qualify for the exemption.

And Subsection (e), entitled "Part-time Exemption," states:

(1) An establishment may engage in different types of activities, and thus constitute different types of uses, during particular business days for purposes of determining whether it is exempt under subsection (c) above. That is, an establishment may be exempt during particular business days and not exempt on others. For example, and without limitation, an establishment may constitute both a nightclub and a bona fide [billiard hall] on certain business days (on which business days persons under the age of 21 may be admitted) and thereafter constitute a nightclub only (on which business days persons under the age of 21 may not be admitted).

. . . .

(3) In order to be able to claim that an establishment is exempt on a part-time basis, all of the following requirements must be met by the establishment; if the establishment fails to meet such requirements, any exemption shall not be recognized by the city and the provisions of subsection (b) of this section shall apply:

> a. The establishment shall first provide written notice to the building official and the police chief that its activities are exempt on certain days and not exempt on others. Such notice shall contain the types of exemption claimed by the establishment (using the same terms therefor as set forth in subsection (a) of this section) and the days during which the establishment shall be exempt. If the establishment thereafter changes its type of exemption or the days it is exempt, it shall provide, before such change, an additional notice thereof to the building official and the police chief.

> b. All portions of an establishment that claim to be exempt must qualify for the same exemption on the same business day. For example, an establishment may not claim to be a bona fide [billiard hall] in a portion of its premises, but not in other portions of its premises, on the same day.

> . . . .

III.    Enforcement of the Ordinance

Persons and establishments that violate Section 6-9 of Ordinance 5650 are subject to criminal and civil penalties, as well as the suspension or revocation of their location permit.[3]  See Subsection (g).  The City does not proactively enforce or investigate violations of the Ordinance.  Instead, the Ocala Police Department only responds to complaints it receives regarding purported violations.  According to the record, the City has made at least two (2) arrests for violations of the Ordinance.

Although Bankshot has never been prosecuted under the Ordinance, it has chosen since the Ordinance's enactment to exclude persons under age 21 from coming onto or being served on its premises at any point in time.  As a result, Bankshot's gross revenues have dropped from an average of $62,023.75 per month to $33,566.64 per month.

## **Discussion**

I.    Bankshot's Standing

In its Supplemental Complaint (Doc. 2), Bankshot contends that Ordinance 5650 is unconstitutionally vague and violates its rights to due process under both the United States Constitution and Florida Constitution, and that the Ordinance violates Bankshot's right to equal protection (Doc. 2).  Before the Court can address the interpretation and effect of Ordinance 5650, the Court must determine whether Bankshot has standing to assert these claims.

---

[3]Though initially disputed, the City conceded at oral argument that violations of the ordinance are subject to criminal as well as civil penalties.

Citing Babbitt v. United Farm Worker's National Union, 442 U.S. 289 (1979), the City first claims that there is no justiciable case or controversy and that Bankshot therefore lacks standing to attack the Ordinance in any manner because it has not suffered an injury in fact - specifically that it has not been prosecuted for a violation of the Ordinance or other civil penalty. The lack of a prosecution of Bankshot, or the immediate threat of one, is true, but that is due to Bankshot's cautious avoidance of a possible violation by excluding from its premises, at substantial business loss, those would-be patrons under 21 years of age.[4]

The law is well settled that "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge the statute he claims deters the exercise of his constitutional rights." Babbitt, 442 U.S. at 298 (citing Steffel v. Thompson, 415 U.S. 452, 459 (1974)). See also Pittman v. Cole, 267 F.3d 1269, 1283-84 (11th Cir. 2001). Here, Bankshot is facing a credible threat of prosecution if it conducts its business as it wishes, and it is suffering a substantial business loss by avoiding a possible violation while it seeks to litigate the constitutionality of the Ordinance. There is, clearly, a justiciable case or controversy between the parties and Bankshot has standing to bring this action.

There remains, however, an issue concerning the scope of Bankshot's standing. In its pleadings and arguments, Bankshot contends that the Ordinance is not only vague and

---

[4]The City also argues that the probability of prosecution is speculative even if Bankshot admitted under-age customers because the police department is not proactive in enforcing the Ordinance and acts only when a complaint is made. This argument is unpersuasive. There is no assurance that the Ordinance will not be enforced against Bankshot, and the record shows that others have been prosecuted under its predecessor versions.

violative of due process as it applies to its business, but it is also constitutionally unenforceable because it is equally vague and uncertain with respect to other types of establishments selling alcoholic beverages. In addition, Bankshot argues without elaboration (other than its overriding claim of vagueness) that the Ordinance is violative of Bankshot's right to equal protection and imposes unconstitutional punishment under the Bill of Attainder Clause.[5] The Court finds that Bankshot lacks standing to assert these claims due to a lack of any injury in fact resulting from them; or, alternatively, and in any event, that the arguments made in support of them are unsupported by any authority and are unpersuasive.[6]

---

[5]In particular, there is no demonstration that Bankshot is being discriminated against as a member of a constitutionally protected class, or that it is being treated differently than others in a substantially similar position, *i.e.*, other pool halls. While some argument is made comparing the treatment of Bankshot with other businesses regulated by the Ordinance, such as pari-mutual establishments, there are obvious differences compelling the conclusion that those establishments are not "similarly situated" in relation to Bankshot. Cf. Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985) (explaining that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike"). Bankshot also has provided no evidence establishing that the Ordinance is an unlawful Bill of Attainder. See United States v. Brown, 381 U.S. 437, 448-50 (1965) (explaining history and purpose of the Bill of Attainder Clause).

[6]Bankshot also lacks standing to bring its claim for damages under 42 U.S.C. § 1983 (Count III of the Supplemental Complaint) because it has not yet suffered any harm by virtue of the enforcement of the Ordinance. Although the fact that Bankshot has not yet been prosecuted or even investigated for a violation of the Ordinance does not preclude a challenge to the Ordinance's constitutionality (or the commensurate equitable relief requested), it does preclude a claim for monetary damages under § 1983. See McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (to impose liability under § 1983 against a municipality, a plaintiff must show that his constitutional rights were violated by a policy or custom of the municipality); Bash v. Patrick, 608 F. Supp. 2d 1285, 1302 (M.D. Ala. 2009) (finding no municipal liability under § 1983 where the plaintiffs presented no injuries). To the extent Bankshot points to its reduced monthly revenues, it is undisputed that Bankshot has suffered such financial losses solely due to its own voluntary

(continued...)

Thus, the lone issue to be decided on the merits in this litigation is whether Ordinance 5650 violates Bankshot's right to due process of law under the Fifth and Fourteenth Amendments because it is unconstitutionally vague.[7]

## II. The Ordinance is Unconstitutionally Vague

The Supreme Court, in Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972), discussed the issue of vague laws:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

When, as in this case, criminal penalties may be imposed for an establishment's failure to comply with an ordinance, the ordinance should be drawn with a greater degree

---

[6](...continued)
election to exclude all persons under age 21 at all times. There has been no act, policy, or custom which directly caused Bankshot's losses. Moreover, there is no evidence of any selective enforcement of the Ordinance, or an attempt to drive Bankshot out of business.

[7]The Court makes no determination concerning the constitutionality of the Ordinance as applied to any party or form of business other than Bankshot. The Court also will not separately address Bankshot's claim that the Ordinance violates the Florida Constitution, as Bankshot has not identified any provision of the Florida Constitution which it alleges is being violated, or made any argument in support of such a claim. Moreover, to the extent Bankshot is relying upon the due process rights afforded under the Florida Constitution, that claim would be subsumed by Bankshot's claim under the Fifth and Fourteenth Amendments.

of precision.  See e.g., Fla. Businessmen for Free Enter. v. City of Hollywood, 673 F.2d 1213, 1218 (11th Cir. 1982).  "Vagueness may invalidate a criminal law for either of two independent reasons." City of Chicago v. Morales, 527 U.S. 41, 56 (1999).  "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." Id. (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)).  Ordinance 5650 is constitutionally vague for both of these reasons.

## A.    Lack of Reasonable Notice

Although the Ordinance's prohibition on patrons under the age of 21 is itself not vague or ambiguous, the Court finds that various subsections defining the exemptions to this prohibition – which in turn dictate the interpretation and enforcement of the prohibition – are vague and uncertain, rendering it impossible for billiard halls such as Bankshot to determine whether and when they are violating the Ordinance.  For example, Subsection (2)(a) of the Ordinance defines a "billiard hall" to require that the playing or watching of pool or billiards must be "the most significant activity engaged in by patrons," but nowhere defines or quantifies the phrase "most significant activity."  Without any criteria for applying the "most significant activity" standard, this subsection is so vague and indefinite as to provide no guidance for persons seeking to comply with its requirements.

More glaringly, the Ordinance contains inherent inconsistencies which the Court – much less any ordinary person – cannot reconcile.  Subsection (2)(b) authorizes an exempt

"billiard hall" to have a dance area so long as it is less than 400 square feet or less than 20 percent of the square footage of the establishment open to the public that is not devoted to playing pool or billiards. However, Subsection (10) defines a "nightclub" (which is expressly subject to the under 21 age prohibition)[8] as any business establishment open after 11:00 p.m. with floor space available and used for dancing, and that has some form of musical entertainment. Subsection (10) further provides that if an establishment is a "nightclub" for any business day,[9] it is a "nightclub for purposes of this section on all business days." Thus, on the one hand, an establishment could qualify as a "billiard hall" (and therefore exempt from the under 21 age prohibition) if it has a limited dance floor area; but on the other hand, if an establishment has floor space (of any size) that is used for dancing and provides music, it is a "nightclub" on all business days and specifically subject to the under 21 age prohibition. These blatantly conflicting provisions - which are nowhere clarified in the Ordinance - make it virtually impossible to discern whether or not an establishment such as Bankshot is exempt or subject to criminal prosecution.[10]

---

[8]See Subsections (a)(1) and (b).

[9]The waters are further muddied because the term "any business day" is nowhere defined. Without any guidance, the Court - and any ordinary establishment seeking to comply with the Ordinance - is left wondering whether an establishment providing dance space and music for only a few hours out of a business day qualifies as a "nightclub" (and therefore loses any chance of obtaining exempt status on all business days), or if the establishment must provide such entertainment for the entire business day in order to lose the exemption.

[10]The Court also notes that dancing area in a "billiard hall" is nowhere defined, and therefore is capable of meaning either a segregated dance floor area or any other area around the billiard hall where patrons are located (including even the areas between the pool tables). There
(continued...)

The inherent inconsistencies do not end there. According to Subsection (e)(1), which attempts to provide a part-time exemption, an establishment can be exempt on certain business days and not exempt on others. This would appear to mean that exempt and non-exempt classifications are mutually exclusive, and once an establishment is classified as exempt or non-exempt, that status remains for the entire business day. However, the very next sentence in Subsection (e)(1) lists the example of an establishment that may constitute <u>both</u> a nightclub and a bona fide billiard hall on certain business days (and thus exempt), and only a nightclub (and not exempt) on other days. Based on this second sentence, it would now appear that an establishment could be both exempt and non-exempt on the same business day. An ordinary person reading these two sentences in tandem would be left utterly confused. Such statements - aside from being inconsistent with each other - also run afoul of the definition of "nightclub" which provides that once an establishment meets the definition of a "nightclub," it is such an entity "on all business days," without exception. Further, Subsection (e) directly conflicts with the requirement in Subsection (d) that to qualify for an exemption, a "billiard hall" must satisfy the definition

---

[10](...continued)
is also no guidance to help an establishment determine if it would lose its exemption if patrons voluntarily left a segregated dance area and began dancing in other areas of the billiard hall. At oral argument the City also conceded that ascertaining the dance area could prove difficult if the area was not set apart by a partition of some sort.

contained in Subsection (2) "during the entire time that the establishment is open for business."  See Subsection (d)(1) "Limitation on Exemptions."[11]

The same problem arises in Subsection (e)(3)(b) which states that "[a]ll portions of an establishment that claim to be exempt must qualify for the same exemption on the same business day."  This sentence seems to imply that an establishment could allocate a certain amount of its square footage to an exemption, while having other sections non-exempt.  However, the Subsection concludes by stating "an establishment may not claim to be a bona fide restaurant in a portion of its premises, but not in other portions of its premises, on the same day."  This sentence - which contains no further elaboration - is capable of varying interpretations: (1) that an establishment cannot have two different exemptions for different portions of its business space at the same time; or (2) that an establishment cannot have a portion of its space exempt, and another portion non-exempt on the same day.  The fact that this sentence is capable of more than one interpretation renders it unconstitutionally vague, and the fact that the second possible interpretation, if true, would conflict with numerous other provisions in the Ordinance (such as Subsection (e)(1)), further solidifies this conclusion.

---

[11]This part-time exemption language also conflicts with the Ordinance's later requirement that to obtain a part-time exemption, the establishment must first provide written notice to the building official and police chief of: (1) the types of exemption claimed by the establishment; and (2) the days during which the establishment will be exempt.  Subsection (e)(3)(a).  This language necessarily implies that exempt and non-exempt status is mutually exclusive, which again contradicts the example listed above.

Even further complicating matters is the Ordinance's statement that "the failure of an establishment to meet [the criteria for a bona fide billiard hall] during isolated time periods for reasons other than the conduct of the establishment shall not cause the establishment to fail to qualify for the exemption." <u>See</u> Subsection (d)(1). This sentence is not explained, and there is no guidance as to what "isolated time period" or "reasons other than the conduct of the establishment" mean.

Thus it is clear that numerous portions of Ordinance 5650 are unconstitutionally vague. The definitional requirements for an exempt "billiard hall" establishment are vague and unspecific on their face, and the provisions governing exemptions are internally inconsistent and largely incomprehensible. As such, it is impossible to ascertain whether and to what extent an establishment which operates pool and/or billiards tables and sells alcohol for consumption on its premises is in violation of the Ordinance's age 21 and under prohibition. Accordingly, the language of Ordinance 5650 "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." <u>Morales</u>, 527 U.S. at 56. <u>See also</u> <u>United States v. Nat'l Dairy Prods. Corp.</u>, 372 U.S. 29, 32-33 (1963) ("Void for vagueness simply means that criminal liability should not attach where one could not reasonably understand that his contemplated conduct is proscribed."); <u>Stansberry v. Holmes</u>, 613 F.2d 1285, 1289 (5th Cir. 1980) ("Any statute or ordinance which proscribes certain conduct must be sufficiently definite to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute.").

**B.    Arbitrary and Discriminatory Enforcement**

In addition to failing to place billiard halls such as Bankshot on reasonable notice, the lack of any clarity as to when or how an establishment qualifies for the "billiard hall" exemption raises the likelihood of its arbitrary or discriminatory enforcement. The conflicting provisions listed above make it impossible to determine whether and for what time period a billiard hall such as Bankshot would qualify as an exempt "billiard hall" or a non-exempt "nightclub." Not only is it exceedingly difficult to ascertain absent quantifying language whether pool or billiards is the "most significant activity," but Subsection(2)(b) also contains the requirement that an exempt "billiard hall" must ensure that "[m]ore than half of the patrons on the premises . . . [are] playing pool or billiards, waiting to play pool or billiards, or watching the playing of pool or billiards." Common sense dictates that it would be nearly impossible for a law enforcement officer to ascertain at all times whether or not more than half of the patrons are playing, watching, or waiting to play pool or billiards.[12] Moreover, in the event Bankshot temporarily failed to meet the "more than half requirement," the Ordinance gives the law enforcement officers unbridled discretion to determine if that temporary period constitutes an "isolated time period" that was not caused by conduct of the establishment. Thus the ambiguous language and inherent

---

[12]Assume, for example, on any business day there were 100 patrons inside Bankshot. In order to verify whether Bankshot was violating the Ordinance, a law enforcement officer would have to identify every single patron who was watching, playing, or waiting to play pool, and verify that at all times, the number of such patrons was 51 or more. And if the 51st person playing pool left to use the restroom, Bankshot would have to force another patron to take that person's place to ensure continued compliance with the Ordinance. To be sure, this is an extreme example, but one reasonably contemplated by the current language in the Ordinance. And at oral argument, the City agreed that it would be extremely difficult for any law enforcement officer to verify at any given point in time whether or not the "more than half" requirement was satisfied.

inconsistencies in the Ordinance violate "the requirement that a legislature establish minimal guidelines to govern law enforcement" and "necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat." <u>Kolender</u>, 461 U.S. at 358, 360. <u>See</u> <u>also</u> <u>Miami for Peace, Inc. v. Miami-Dade County</u>, No. 07-21088-CIV, 2008 WL 3163383, at * 11 (S.D. Fla. June 4, 2008).

The Court is not persuaded by the City's assertion that the Ordinance is rarely enforced, and only after first receiving a complaint from a member of the general public. This does little to mitigate the fact that there is nothing to preclude its enforcement against Bankshot absent a permanent injunction, and Bankshot has produced evidence of at least two (2) separate criminal prosecutions of other establishments - neither of which appear to have been instigated by a citizen's complaint.

For all of these reasons, the Court concludes that Ordinance 5650 is unconstitutionally vague.

### III.    <u>Severance Is Not Feasible</u>

In the event the Court were to find any portions of the Ordinance unconstitutionally vague, the City requests that the unconstitutional provisions be severed and the remaining portion of the Ordinance allowed to stand. Federal courts look to state law to determine issues of severability of local ordinances. <u>Leavitt v. Jane L.</u>, 518 U.S. 137, 139 (1996). In Florida, the relevant test is:

> When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose

expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.

Schmitt v. State, 590 So. 2d 404, 414-15 (Fla.1991) (citations omitted). The doctrine of severability recognizes that federal courts have an affirmative duty to preserve the validity of legislative enactments when it is at all possible to do so. See Ray v. Mortham, 742 So. 2d 1276, 1280 (Fla. 1999).

Applying the above test to Ordinance 5650, the Court determines that severability is not appropriate. The defects in the Ordinance result from uncertain, ambiguous, and internally conflicting definitions of "billiard hall," "nightclub" and the subsections concerning part-time exemptions and limitations on exemptions. Severance of the offending subsections and enforcement of the balance of the Ordinance obviously would aggravate the Ordinance's unconstitutionality because the constitutional violations stem from the insufficiency or absence of guidance as to when an establishment serving alcohol is or is not exempt under the Ordinance, as well as how law enforcement interprets the Ordinance. Only the inclusion of further definitions with standards capable of real measurement, and clarification of the part-time exemption provision, rather than severance of existing provisions, would cure the Ordinance's constitutional violations. Moreover, without these provisions, the City's intent behind the Ordinance (to permit entities such as billiard halls leave to entertain patrons under the age of 21, and to prohibit such conduct by nightclubs), would be thwarted. In short, the unconstitutional provisions of the Ordinance in this

instance are not severable from the balance of the enactment.[13]  See Public Citizen, Inc.

v. Pinellas County, 321 F. Supp. 2d 1275, 1308-09 (M.D. Fla. 2004); Fla. Outdoor

Advertising, LLC v. City of Boynton Beach, 182 F. Supp. 2d 1201, 1210-11 (S.D. Fla.

2001).[14]

## Conclusion

Because the Court finds that Ordinance 5650 is unconstitutionally vague as a matter

of law, the City is not entitled to summary judgment as to Bankshot's claims for declaratory

and injunctive relief in its Supplemental Complaint (Counts I and II).  In reaching this

decision, the Court has necessarily resolved all legal issues in Bankshot's favor as to these

two claims, and the Parties agree that there are no disputed issues of fact.  Therefore

Bankshot is entitled to the declaratory judgment it has requested, as well as an injunction

precluding enforcement of the Ordinance against it.  Summary judgment in favor of

---

[13]At oral argument, the City represented that the Ordinance contained a severability provision, whereby if any portions of the Ordinance were found unlawful or unconstitutional, those portions should be severed and the remaining sections of the Ordinance would remain valid.  The Court has carefully reviewed the Ordinance and has been unable to locate any such provision. Nevertheless, even if such a provision existed, the Court concludes that the uncertainty and ambiguity discussed herein permeates the entire Ordinance, rendering severance impracticable. See Schmitt, 590 So. 2d at 415 (severability does not always depend on the inclusion of a severability clause in a legislative enactment; such a clause only buttresses the case for severability).

[14]Neither party should interpret the Court's ruling as a commentary on the validity of under age drinking restrictions on establishments in Ocala.  The City is free to enact and enforce reasonable regulations governing under age drinking, provided that the regulations afford reasonable notice to the ordinary person and do not encourage arbitrary and discriminatory enforcement.

Bankshot and against the City with respect to Bankshot's claims for equitable relief will be entered, notwithstanding the absence of a cross-motion.[15]

As discussed above, the Court has also held that Bankshot has not successfully alleged claims under Florida Statutes §§ 561.02, 562.45, or under the United States Constitution's Bill of Attainder Clause. The Court has also found that Bankshot has no claim for violations of the Equal Protection Clause, or for violations of the Due Process Clause based on claims of overbreadth, or on behalf of non-similarly situated establishments. Similarly, Bankshot cannot sustain a claim for monetary damages under 42 U.S.C. § 1983. Therefore, the Court will grant summary judgment in the City's favor as to these claims.

Accordingly, upon due consideration it is ORDERED as follows:

(1)     The Defendant City of Ocala's Dispositive Motion for Summary Judgment (Doc. 22), is GRANTED IN PART AND DENIED IN PART. The Clerk is directed to enter judgment in favor of the City of Ocala and against the Plaintiff Bankshot Billiards, Inc. on the following claims set forth in Counts I and II of the Supplemental Complaint (Doc. 2): (1) claims for violations of Fla. Stat. §§ 561.02, 562.45; (2) claims for violations of the Bill

_____

[15]See United States v. Grayson, 879 F.2d 620, 625 (9th Cir. 1989) (court may grant summary judgment without notice if the losing party has had a full and fair opportunity to ventilate the issues involved in the motion); British Caledonian Airways Ltd. v. First State Bank of Bedford, Tex., 819 F.2d 593, 595 (5th Cir. 1987) (motion for summary judgment opens the door to allow court to grant summary judgment for non-moving party); Landry v. G.B.A., 762 F.2d 462, 464 (5th Cir. 1985) (court may grant summary judgment against movant even though opposing party has not filed motion).

of Attainder Clause of the United States Constitution; (3) claims for violation of the Equal Protection Clause; (4) claims for violation of the Due Process Clause based on overbreadth; and (5) claims for violation of the Due Process Clause brought on behalf of other non-similarly situated establishments.  The Clerk is also directed to enter judgment in favor of the City and against Bankshot as to the claim for monetary damages under 42 U.S.C. § 1983 (Count III).

(2)     The Clerk is directed to enter judgment in favor of Bankshot Billiards, Inc. and against the City of Ocala as to Counts I and II of the Supplemental Complaint (Doc. 2) to the extent they are premised on a claim that Ordinance 5650 is unconstitutionally vague and violates Bankshot's Fifth and Fourteenth Amendment due process rights.  The Judgment should also include the following language: "The Court declares that the City of Ocala's Ordinance 5650, enacted April 2007, is unconstitutionally vague on its face in violation of the Fifth and Fourteenth Amendments of the United States Constitution."  The Judgment should further state that "the City of Ocala, its officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with any such persons, are immediately and permanently ENJOINED from enforcing City of Ocala Ordinance 5650 as enacted April 2007 against the Plaintiff Bankshot Billiards, Inc."

(3)     The Clerk is further directed to terminate all pending motions, and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 12th day of February, 2010.

UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record